Mr. Wunderlich. Thank you, may it please the court. My name is Joshua Wunderlich and I, along with my colleague Megan Stiles, represent the appellant in this case, Mr. Malik Weatherly. We request this court, and today I will explain why this court must, one, reverse the district court's dismissal of Mr. Weatherly's claim under the Family and Medical Leave Act as they relate to his June 2016 suspension, and two, reverse the district court's dismissal of Mr. Weatherly's retaliation claims under the ADA and the Missouri Human Rights Act. Both of these issues boil down to the question of whether the district court followed standard 12b-6 interpretation and giving the non-movement plaintiff the benefit of all inferences. And we're going to address these issues in reverse order from the briefing. So first, we'll discuss- Counselor, excuse me. I wonder, could you turn your volume up a little or speak a little louder? Please, I'm having difficulty hearing you. Let me move my phone closer to me. Is this better, Judge? Thank you. Yes, thank you. Is this better, Judge? I think so, thank you. Great, thank you. So first, I'd like to address the issue that the district court aired in finding that Mr. Weatherly did not exhaust his administrative remedies with regard to his disability discrimination and retaliation claims in his July and October 2017 charges of discrimination. In Nichols v. American National Insurance Company, this court held that a plaintiff can use a lawsuit to seek relief for any discrimination that grows out of or is like or could be reasonably related to the substance of the allegations in the underlying administrative charges. And contrary to the district court's rationale, not only did the dismissed disability claims alleged in Mr. Weatherly's amended complaint have grown out of the allegations in his administrative charges, but several of those counts had been expressly alleged. First, addressing count four of Mr. Weatherly's amended complaint, he alleges that he was discriminated against because of his asthma, specifically that he was terminated because of it. And in his July 2017 charge, which is found at appendix page 107, Mr. Weatherly checked the disability box. He stated that he had time to take off, he had to take time off for his disability. He missed one day because of his disability. And he had to meet with someone in the later days department at Ford and a committee representative on June 11th, 2017 to explain why he'd missed those days. And finally, he said that when he was there, they told him he was terminated. These allegations clearly would have put the administrative agency and Ford on notice that he believed he had been terminated because of his disability related absences. And it's difficult to comprehend how those allegations contained in his charge would not have been sufficient. The district court relied on March the Presbyterian Homes and Services and Michaelson versus Wells Fargo advisors to unpublished court district court cases for the proposition. The charges that only mentioned disability discrimination do not exhaust accommodation claims because the latter cannot be reasonably expected to grow out of the former. Judge, is this better? I apologize. Eric? And so as I was saying, those two cases unpublished stand for the proposition that charges that only mentioned disability discrimination claims do not exhaust accommodation claims because the latter cannot be reasonably expected to grow out of the former. But in both of those cases, the plaintiff has simply alleged discrimination and not mentioned the more nuanced reasonable accommodation claim. And the reasonable accommodation claims can be seen as a subset of disability discrimination claims. But the case here as far as count force concerns is the other way around. Because Mr. Wethely's charge expressly included the subset of failure to accommodate, the district court somehow used those cases to find that his charges precluded the general discrimination claim. And that just did not make sense. In fact, if Mr. Wethely had not expressly mentioned potential failure to accommodate claim in his charge, Ford would argue that he was only alleging a general discrimination claim and that an accommodation claim should have been precluded. And that kind of double bind cannot be an intended consequence of the administrative process. Counsel, one of the problems I'm having with your argument is when you specifically, when the charge specifically sets forth particular claims. So it says, for example, as you mentioned, I think it fairly incorporates a reasonable accommodation claim, or at least there's an argument. Does it somehow by mentioning specific legal claims, basically take away the notice with respect to other claims? So this is not an instance in which you have a short and plain statement of the facts, figure out what the claims are. This is a situation which the charge actually specifies certain claims and not others. Does that make it a different case? We would argue that the, again, that the mentioning of specific claims shouldn't, should not preclude the applicability of a general discrimination claim. And especially that's in light of, you know, this court's decisions and Shannon versus Ford Motor Company, ironically Ford Motor Company, that says the court should not use Title VII administrative procedures as a trap for unwary pro se civil rights plaintiffs. And that mere vagueness in a pro se claim should not sound the death knell for a plaintiff's discrimination allegation. Again, and also- Counsel, that's vagueness is my, it's my understanding of it. So that's one of those situations I mentioned where you're not setting forth specific claims, but you're just vague about what claims you have. That to me strikes me as a different situation. Well, and judge, and I would say in response to that, that then what you're saying is, so you shouldn't punish a plaintiff because he was too vague, but you should punish a plaintiff because he was too specific. And again- It's not punished. It's not punished. It's a matter of notice, which is, are you placing the agency and the other party on notice? And when you specify particular claims, there's at least an argument that it doesn't include others or the defendant wouldn't know that it includes others. Right. And to that judge, I would say as far as this court said in Tart versus Hill being Lumber Company, that the scope of a civil suit may be as broad as the scope of an administrative investigation, which quote, could reasonably be expected to grow out of a charge of discrimination. And so if a plaintiff is saying that he was fired, they took time off that, and the time off was due to disability, and then he got fired for taking that time off, then it can be reasonably expected to grow out of that, that he was also alleging general disability discrimination. As far as counts 10, excuse me, 9, 10, and 11 of Mr. Weatherly's amended complaint, which were all related to his October 2017 charge, which is appendix page 198, he stated that he gave Ford his restrictions for his disability. Ford told him his restrictions need to be more specific and the medical wouldn't accept them. Because he was not given those restrictions, his disability caused him to take a day off, that he had a doctor's note and Ford told him he would be covered, and Ford told him that even though he was covered, they were charging him with an AWOL, absence without leave, and because of that, he was fired. These are all related to scoliosis, and again, relying on the Michelson case, the district court essentially found that Mr. Weatherly's October 2017 charge could not be interpreted as a state of failure to accommodate claim, even though he said that he gave them disability-related restrictions and that Ford refused to give him those restrictions, and then after giving lip service to those express allegations, the court perplexingly concluded other than generally discussing his disability and that he was charged a half day and he was terminated because of it, the charge does not discuss or address his disability or how Ford failed to accommodate his disability. Again, we believe that to be patently false, but additionally, in coming to the court's conclusion, the district court relied on those unpublished district court cases and included and completely ignored controlling appellate authority, including black letter law that all reasonable inferences must be granted in the plaintiff's favor when considering a 12B6 motion, as well as the Shannon Ford Motor Company and TARP-V held BMW company cases that I just cited. And then, Council Tenant 11, again, similar analysis as to the others. The retaliation, or excuse me, the retaliation claim, the court reasoned that because Mr. Weatherly only mentioned that he gave Ford his restrictions for his disability and that due to his disability he had to take time off, the court basically assumed that because he made that specific allegation of retaliation for the prior charge, that somehow precludes a retaliation claim for requesting the accommodation. Again, we would argue that surprisingly pleasant specificity on the part of the plaintiff should not preclude what would otherwise be allowable under the for vagueness. Mr. Weatherly, this is Chet Smith. Would you address the statute of limitations issue? Yes, absolutely, and I was just moving on to that, Your Honor. So, as far as the FMLA statute of limitations issue, according to this court's decision in Samuels v. Kansas City, Missouri School District, to prove willfulness, a plaintiff must demonstrate the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. And the court and Ford both make much of the idea that Mr. Weatherly used the word willful in various other points of his amended complaint, and therefore because he didn't use it in his counts 1 and 2 addressing the FMLA claims that he must not have intended to allege defendant's conduct was willful. But the true irony is that if Mr. Weatherly had included the word willful in his FMLA counts, but had only done so without additional factual support, Ford would rightly have argued that the allegations of willfulness were conclusory, and that he would have needed to include specific allegations evincing willfulness to survive both Iqbal and Twombly scrutiny. But Mr. Weatherly did include such factual allegations in a Pound's principle brief in pages 18 and 19, lists a number of factual allegations that would support such a finding willfulness, including but not limited to that Ford failed to make good faith efforts to establish and enforce policies to address and I'm sorry to interrupt. This is probably a question better directed to the other side, but would it have been enough for you to have simply said that the violation was willful? Would that have satisfied the requirement? Well, and again, I think your honor, I think that's what Ford is arguing is that we should have said willful, but if we had only said willful and not had specific allegations underlying it, they would have alleged that we didn't satisfy Iqbal and Twombly. That's what I, that's what, but here's the more fundamental question I have is I'm wondering whether we're not looking at this the wrong way. If this is an affirmative defense statute of limitations, it's true that we can do, a court can dismiss a complaint if it appears on the face of the complaint that there are facts that establish in that complaint that the statute is wrong, but that's not really your complaint. Your complaint doesn't establish that it wasn't willful. And so, you know, if you plead, if you, I'm sorry, if you plead a statute of limitations of the defense, that's an affirmative defense that doesn't even have to be replied to by way of pleadings. It's simply a matter for the other side to prove. So I found a case, I think it's in Sixth Circuit that involved a similar difficulty, not with respect to an employment claim like this, but rather with respect to an EPA claim. But nevertheless, the question of willfulness and non-willfulness was involved. A statute of limitations was pleaded and the Sixth Circuit said, well, we don't have to make the allegations of willfulness because this is an affirmative defense and it doesn't appear on the face of the complaint itself that the statute is wrong. In other words, you haven't proved the case against yourself, which is required before the case can be dismissed. So I'm wondering if that's not really the better way of looking at the problem. Absolutely, Your Honor. And you read my mind. I was getting to the issue. And in fact, this court in Jesse v. Potter said the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12b6 dismissal unless the complaint itself establishes the defense. And in saying so, the court relied on another case from this court, Varner v. Peters and Farms. Importantly, the Potter court analyzes the Varner decision as saying the dismissal was only proper in that case because the complaint expressly ruled out tolling of the statute of limitations. And our argument here would be that Mr. Weatherly's amended complaint does not rule out tolling of the statute of limitations or does not rule out the three-year statute of limitations. That's an issue ultimately willfulness is an issue that's better reserved for the finder of fact and not for the court at the early stage of a motion to dismiss. And I reserved, I requested three minutes of rebuttal time and I've seen I've exceeded that. So unless there are other questions, I will reserve my last time for rebuttal. Thanks, Mr. Ponderwood. Thank you, Your Honor. Kirti Datla for Ford Motor Company. I think it makes sense to start with the willfulness issue and I'd like to address Judge Arnold's question about how to think about how to deal with a statute of limitations issue like this on a motion to dismiss. I think we should start with page 17 of the appellant's opening brief where the appellant concedes that if the relevant statute is the two-year statute of limitations, then these claims related to the June 2016 suspension are time barred, which I think means that the plaintiff is conceding that if that's all there was in the complaint, the complaint would be time barred. So then we have to ask, is there something in the complaint to make us think that the longer statute of limitations in this case, I think it's important to think about what the upshot of plaintiff's argument here is, which is that any time any statute of limitations has, for example, an equitable tolling requirement or the possibility of equitable tolling or a two-tiered statute of limitations like there is in this case, you can never raise a statute of limitations argument on to dismiss because there will always be some theoretical possibility that the plaintiff could raise it later in the case. And that's just not consistent with this court's cases. So just to give you an example, and this case isn't cited in the brief, so I'll give you the citation. It's Smith-Rudd v. City of St. Paul, 746 F. 3rd, 391. That's this court's case from 2014. It deals with whether the Fair Housing Act statute of limitations was barred the plaintiff's claims there. And there the court said that because there was nothing in the complaint that suggested that equitable tolling was appropriate, the district court had appropriately dismissed those claims on a motion to dismiss and this court affirmed. And I think in the context of this specific statute, it's not this court, it's the Sixth Circuit case dismissing claims on the basis of the statute of limitations defense, specifically because none of the allegations in the case showed willfulness. That case is Kruger, C. R. U. G. H. E. R. 761 F. 3rd, 610. And that's a Sixth Circuit case from 2014, which affirmed the dismissal of claims on a motion to dismiss. So I just don't think it's common for this to happen. And I don't think that should stop the court from affirming here. And so I think if we turn... Counselor, sorry to interrupt, but I misspoke. It was the Tenth Circuit case that I was talking about. It's Shields against U.S. Postal Service. It's unpublished, but it relied on a published case, I believe. It's 729 F. Appendix 662. I think the Sixth Circuit case that I found was actually against my position or against the position I was arguing for. So I wanted to clear that up. It's the Tenth Circuit. I got it, Your Honor. And I'm not familiar with that case, but I do think the point stands that if it were really the case that the rule is that you can raise a statute of limitations defense when there's the possibility of some exception to that defense applying, even though nothing in the complaint suggests that, then I think there would be cases, published cases saying that over and over again, and that's just not consistent with the cases that we've found that do allow for this kind of dismissal. So turning to the specific allegations that the plaintiff alleges support willfulness in this case, the plaintiff identifies 13 allegations. This is at pages 18 to 19 of the opening brief that the plaintiff thinks show willfulness. And I think if you drill down into these allegations, Your Honors, you'll find that they simply do not state a willful violation, which the Supreme Court has described as a significantly... Counsel, I'm sorry to interrupt Would it be enough if he had said, well, these violations were willful? Would that have been enough or do you have to say more? No, Your Honor. Opposing counsel is right that if all the plaintiff had done was say the word willful, that would be a legal conclusion that under Twombly and Iqbal is not sufficient. The reason that we point out that the plaintiff did not allege willfulness towards these two counts, but did with respect to counts three through 11, is simply to say that it just provides further evidence that the plaintiff in this case did not actually have allegations that could support willfulness. That's in addition to the fact that, you know, these allegations aren't sufficient and that the plaintiff had the opportunity to seek leave to amend after the motion to dismiss was filed because the time for doing so hadn't run. So we just think all of that taken together suggests that there just aren't allegations that could support a claim or could even raise the possibility of willfulness sufficient to survive a motion to dismiss. But I would like to quickly go through the allegations that the plaintiff identifies before turning to exhaustion. So four of the allegations that the plaintiff identifies are legal conclusions, like the allegation of willfulness would have been, for example, in paragraph 60, the plaintiff says the suspension in June 2016 interfered with my FMLA rights. That's a legal conclusion. Two of the allegations on which the plaintiff relies most heavily are mere labels. So this is paragraph 63 of the amended complaint and 64, where the plaintiff alleges that Ford failed to make quote good faith efforts to establish policies and failed to quote properly train its employees. There's no factual content to these allegations and they're similar to the kinds of allegations that the Supreme Court has described as insufficient because they're naked assertions devoid of further factual enhancement. Put differently, there's nothing in the amended complaint to say why Ford acted not in good faith or why Ford's policies were improper. It's just a bare assertion. And that leaves seven allegations. This is at paragraphs 31 through 37 of the amended complaint, which basically lay out the plaintiff's theory of why there was an alleged FMLA violation with respect to the June 2016 termination. And all that does is at most raise the possibility of a violation, which this court has said is not sufficient to allege willfulness because there has to be something different between an ordinary violation and a willful violation. So the only claims that are at issue here are counts one and two with respect to the June 2016 suspension, and those claims are barred by the statute of limitations. So turning to the exhaustion issues, we think that Judge Strass's question to opposing counsel gets the issue in this case exactly right, which is that the two charges filed here fall into the category of charges that this court has described as highly specific, and that any reasonable EEOC or MCHR employee or Ford reading these two charges would take the plaintiff at his word about what kinds of claims he was raising. So there are various indicia of why that's true in each of the charges, so it might make sense to take them individually. So if we start with the July 2017 charge, the count in the amended complaint that the plaintiff would like to raise based on this charge is a claim that he was discriminated against on the basis of his disability when he was terminated. That is, that he was terminated because of his disability. That's not the claim that the plaintiff said he was raising. At JA128, you can see the charge, and in bolded text, the plaintiff says the two claims he was raising when he says, I believe I was subject to different terms and conditions because of my race. I also believe Respondent failed to reasonably accommodate my disability. Because these two claims are the only claims that he expressly raised, the court can then ask, well, is the disability discrimination claim like or reasonably related to those claims? And the answer to that question in this case is no. That's because, as this court explained in the case, a discriminatory intent claim like this disability discrimination claim is intent. And there's nothing in these allegations that speaks to intent and might put either the agency or Ford on notice that even though the plaintiff didn't say he was raising a disability discrimination claim, that's what he was trying to do. And you can see that in the contrast between the allegations with respect to the race discrimination claim, in which the plaintiff clearly attempts to his white co-workers were treated differently than he was, which is the type of allegation that speaks to intent with respect to a race discrimination claim. There's no similar allegations with respect to the disability discrimination claim. The plaintiff's theory of the case appears to be, as long as I raise some type of claim related to disability, I have exhausted any type of claim related to disability. And that's not consistent with this decision in Peebles, and it's also not consistent with the Seventh Circuit's decision in Green, which is cited in our papers. So, the next counts that are at issue relate to the October 2017 charge. This charge relates to counts 9 through 11 of the amended complaint, which address which revolve around his claims that he was retaliated against in turn for the discharge of discrimination he filed. Here too, this is the kind of very specific charge that this court has said exhausts only the claims that are expressly in the charge. So, this is a JA-129. The plaintiff says in bolded text, or maybe it makes sense to start with the boxes that the plaintiff checked, the plaintiff portion of the charge start with the protected activity that forms the basis of the retaliation claim. I filed a charge of discrimination related to my June termination. Then the complaint lists various actions that the plaintiff thinks were retaliatory. For example, there was a delay in my insurance and the other claims that follow. The plaintiff sums up his claim again in bolded text by saying, I believe I was denied my benefits and terminated in retaliation to the charge of discrimination that I filed. Counsel, I'm going to ask you about that because I have a completely different view of what he says that I think you do, which is in the above paragraphs, he talks about providing the restrictions to Ford. And then he says, I believe I was denied my benefits. I actually think that what he's stating in lay speak and non-lawyer speak is I wasn't reasonably accommodated. I gave Ford all of these things that I wanted, that I needed. I gave him a doctor's note. I gave him all these things. And then I was denied my benefits, benefits being reasonable accommodations that I was seeking. Why doesn't that suffice? That seems to me to be a slam dunk for the other side. So I think your honor, that that is, is the sort of hypertextual reading of this charge that we, we would disagree with because it requires sort of separating out the elements of that sentence to say, I believe one, I was denied my benefits and two terminated in retaliation to the charge of discrimination I filed. We think that sentence is better read to say, I believe it's as a summation of the four allegations of retaliatory conduct that come before, which relate to benefits in the sense that he alleges I was not given my insurance in a timely manner and this request for accommodations where Ford said the request wasn't specific enough. So it's just summing up all of the claims that he just had made and said, I think you could substitute in the words, I believe these actions were in retaliation to the charge of discrimination. The problem I'm having with your argument is you're asking us to read it in a hypertextual manner. In other words, it's highly specific. We're reading the other ones, the other, you know, includes race discrimination, but doesn't include disability discrimination. You're asking us to read it highly technical. So I guess my point is, is for consistency purposes, why don't we read this in a hyper technical manner as well? Be consistent. So when I say hyper technical, your honor, all I mean is that parsing out the two words, the two phrases in that sentence in isolation isn't consistent with how those words appear in the charge. And if you look at the charge as a whole, which is how a reasonable agency employee or Ford would, you would see that they, you know, clearly both in form and in substance lay out a story of retaliation. And the reason, you know, one reason we know that the agency would have read it that way, which is, which is the test for exhaustion, sort of what a reasonable investigation would have taken into account is at JA 131, where you have the notice from the MCHR to Ford, which checks only the retaliation box. So there's just not any evidence either, you know, in terms of reading the charge reasonably, or in terms of the document that the agency actually sent to Ford to give it notice of the claim that the agency thought there was a reasonable accommodation, disability discrimination claim in this charge. And this court has read charges when they are specific to be specific. For example, in the Williams case, the court said this charge was highly specific. And even though the complainant was pro se before the agency in that case, the court held her to the specific claim of discrimination that she was, she was raising there. The same thing occurred in the mentioned that he was fired after raising a discrimination claim based on association, his he had only checked the box for discrimination. And the only claim that he had expressly raised was that claim. So when a charge is as specific as the two charges in this case, the court has held that the claims that the plaintiff later seeks to raise in court are not exhausted. So we would urge this court to affirm. Thank you, Mr. Hotley. Mr. Wendelick, you have under a minute, but I'll give you a full minute for rebuttal. We asked quite a few questions. Thank you, your honors. I would like to address quickly the, the issues of first, the statute of limitations issue. The Ford mentioned a couple of cases that weren't admittedly not in the briefing, but what I'd like to address the direct the court attention to is the three cases that they did rely on in excuse me, that they did rely on in their briefing. Hanger versus Lake County McLaughlin versus Richland and Jared versus ERC props properties, which two eight circuit cases in a unit of Supreme court case, two, and it's crucial that two of these cases were decided at the summary judgment stage. And one was decided after a full trial, which we would argue is crucial. And ultimately underscores that whether fourth conduct was wealth willful is ultimately a conclusion reserved for the finder of fact after the creation of a full record. Additionally, very quickly, as far as the exhaustion issues, we would know, again, that judge Strauss hit the nail on the head as far as we're concerned that the issue is Ford is asking this court to engage select in a selective hypertextual analysis of Mr. Weatherly's charges. And this is inappropriate, especially with Mr. Weatherly's charges haven't been filed pro se with that. Mr. Weatherly, your time's expired. Yep. Thank you. I wish to thank both counsel for the argument you provided to the court this morning in the briefing, which you've submitted in the case, we will take the case under advisement. Chief Judge Smith, could I ask a question, please? Yes, please. I wonder if we couldn't have counsel for Ford submit a 28-J letter with respect to the cases that she just cited. Absolutely, your honor, we'll do. With your permission, chief. Yes. Thank you. All right. Thank you.